**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**UNITED STATES OF AMERICA**                                      **PLAINTIFF**

**v.**

**AFFIDAVIT**

**MARION PINDER,**
**EDGAR HERNANDEZ-DURON,**
**JESUS RODRIGUEZ, and**
**SANTIAGO RODRIGUEZ**                                            **DEFENDANTS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I, Christopher J. Hill, being duly sworn, do hereby depose and state:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am authorized and have the responsibility to investigate persons for violations of

federal law, involving the unlawful distribution of drugs, (21 U.S.C. § 841(a)(1)), attempt and

conspiracy to commit the same (21 U.S.C. § 846), money laundering  (18 U.S.C. § 1956 and

1957), and illegal possession of weapons (18 U.S.C. §§  922 and 924(c)(1)).  In my capacity as a

DEA Special Agent I am authorized to arrest persons for violations of federal law, including for

those offenses listed above.

2.      Prior to being a DEA Special Agent, I served five years in Special Operations as a

United States Air Force Combat Controller. I have participated in drug investigations

extensively, including international narcotics smuggling operations; narcotics-related money

laundering; and possession and distribution of cocaine, fentanyl, heroin, methamphetamine, and

other drugs.  I have debriefed defendants, cooperating individuals, and witnesses who, from their

1

personal knowledge, related how they amassed, spent, converted, transported, distributed, and concealed the proceeds of their unlawful drug trafficking.

3.      This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties.  The information contained in this affidavit is not a complete account of everything known to me about this case. Rather, it contains the facts that I believe are sufficient to support a finding of probable cause for the violations described within this affidavit.

4.      As set forth in greater detail below, my investigation indicates that there is probable cause to believe that, on or about April 20, 2026, in Fayette County, in the Eastern District of Kentucky, Marion Pinder, Edgar Hernandez-Duron, Jesus Rodriguez, and Santiago Rodriguez, knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and conspired to do the same with each other in violation of 21 U.S.C. § 846.

## PROBABLE CAUSE

5.      In preceding months, investigators and law enforcement officers with the Drug Enforcement Administration ("DEA"), Federal Bureau of Investigation ("FBI"), Homeland Security Investigations ("HSI"), Kentucky State Police ("KSP"), and Lexington Police Department ("LPD")—collectively referred to herein as "investigators"—conducted a joint investigation of Marion Pinder ("Pinder") and his drug trafficking organization ("DTO").

6.      Through recent investigative activities, investigators identified 3813 Winthrop Drive, Lexington, Kentucky (hereafter, "the Winthrop address") as Pinder's residence.

2

7.      On April 20, 2026, at approximately 7:05 pm, investigators conducted surveillance on the Winthrop address. Investigators observed a white Dodge Ram truck with a camper shell (hereafter, "Dodge Ram") parked in the driveway of the Winthrop address. Within the open garage, investigators observed Pinder meeting with two Hispanic males, one wearing a red/orange shirt (hereafter, referred to as "Orange Shirt") and one wearing a blue shirt (hereafter, referred to as "Blue Shirt").

8.      At approximately 7:14 pm, investigators observed a black Ford Explorer (hereafter, "Ford Explorer") arrive in the area of the Winthrop address. A Hispanic male exited the front passenger seat of the Ford Explorer and approached the residence. The driver did not exit the vehicle. The Ford Explorer departed.

9.      Investigators identified the individual who exited the Ford Explorer as Edgar Hernandez-Duron ("Duron"), a target of previous DEA investigations in Lexington, Kentucky, dating back to 2019.

10.      Investigators then observed Orange Shirt standing near the open tailgate of the Dodge Ram. They also observed Blue Shirt crawl from the bed of the Dodge Ram and exit the vehicle. Orange Shirt and Blue Shirt then transported a red cooler from the tailgate of the Dodge Ram into the open garage door of the residence where Pinder remained. Once all parties (Pinder, Orange Shirt, Blue Shirt, and Duron) were inside the garage, the garage door closed.

11.      Minutes later, the garage door reopened. Investigators observed Orange Shirt and Blue Shirt emerge from the garage and shake hands with Pinder. Blue Shirt then entered the driver's seat of the Dodge Ram, and Orange Shirt entered the vehicle on the front passenger side. At approximately 7:30 pm, the Dodge Ram pulled away from the residence. The investigators then established mobile surveillance of the Dodge Ram.

3

12.     As the Dodge Ram pulled away, surveillance confirmed that the vehicle continued to be occupied by Orange Shirt and Blue Shirt.

13.     Investigators observed on the Dodge Ram a Louisiana license plate, bearing number Z707027. A check of a reliable law enforcement databases revealed that the Dodge Ram was registered to Santiago Rodriguez at 317 Superior Road, Church Point, Louisiana.

14.     According to records available to HSI, the Dodge Ram had been observed near Corpus Christi, Texas on April 10, 2026—an area known to investigators as a source location for many illegal narcotics distributed in the United States.

15.     At approximately 7:31 pm, investigators observed Pinder and Duron carrying a red cooler consistent with the one previously offloaded from the Dodge Ram by Orange Shirt and Blue Shirt.  Pinder and Duron placed the red cooler within a Jeep Compass (hereafter, "Jeep Compass") parked near the Winthrop address.

16.     Investigators observed on the Jeep Compass a Kentucky license plate, bearing number K7A 305. A check of a reliable law enforcement database revealed that  the Jeep Compass was registered to "R.M.,"[1] a resident of Lexington, Kentucky.

17.     After placing the red cooler in the Jeep Compass, Pinder entered the driver's seat of the vehicle and Duron entered the right passenger side. Once the parties were inside the vehicle, the Jeep Compass departed the area with investigators maintaining visual contact with the vehicle. The Jeep Compass traveled directly to the Millpond Center, a large shopping center located at 3344 Partner Place, Lexington, Kentucky, a distance of approximately one mile from the Winthrop address.

---

[1] This individual's name and address is known to law enforcement but shielded herein for privacy reasons.

18.    Upon arriving at the shopping center, the Jeep Compass initially approached the area of the Speedway gas station. Investigators observed the Ford Explorer (the vehicle that previously dropped off Duron at the Winthrop address) near the Speedway. The Jeep Compass pulled near the Ford Explorer. Each vehicle then traveled through the parking lot to the area of Sky Zone Trampoline Park, another business in Millpond Center.

19.    At approximately 7:55 pm, members of the KSP East Interdiction Team, assisted by members of HSI and DEA, attempted to conduct a traffic stop of the Jeep Compass in the Millpond Center parking lot. Upon activation of emergency lights by law enforcement vehicles, both Pinder and Duron fled the Jeep Compass on foot and were quickly apprehended.

20.    As members of law enforcement cleared the Jeep Compass for safety, troopers observed in plain view a kilogram of suspected cocaine in the front passenger seat area. A subsequent search of the vehicle also yielded the red cooler, which KSP observed to contain ice and shrimp.

21.    While KSP performed interdiction on the Jeep Compass, other investigators maintained surveillance on the Dodge Ram (the vehicle used by Orange Shirt and Blue Shirt that had been in the driveway of the Winthrop address earlier in the evening). Investigators observed the Dodge Ram travel to a Hampton Inn hotel located at 453 East Brannon Road, Nicholasville, Kentucky (hereafter, "the hotel").

22.    At approximately 7:42 pm, the Dodge Ram stopped underneath the front desk awning. Orange Shirt existed the passenger side of the vehicle and entered the lobby of the hotel. A short time later, Orange Shirt returned to the vehicle. The Dodge Ram then traveled to the hotel's rear parking lot. Orange Shirt and Blue Shirt then exited the Dodge Ram and entered the hotel via a rear entrance.

5

23.     At approximately 8:02 pm, Orange Shirt and Blue Shirt exited the hotel and approached the Dodge Ram. At that time, investigators initiated an encounter with Orange Shirt and Blue Shirt. During this encounter, Orange Shirt identified himself as Jesus Rodriguez ("Jesus") and Blue Shirt identified himself as Santiago Rodriguez ("Santiago"). Jesus and Santiago confirmed that that they were associated with the Dodge Ram. Jesus and Santiago further advised that they were staying in Room 205 of the hotel (hereafter, "Room 205").

24.     Investigators then requested consent from Jesus and Santiago to search Room 205 and the Dodge Ram. Rodriguez and Santiago each provided written consent to search Room 205. Santiago, the registered owner of the Dodge Ram, provided verbal consent to search the vehicle.

25.     The search of the Dodge Ram revealed a toolbox in the bed of the truck with a false bottom. Within the false bottom, agents located and seized approximately thirty kilograms of suspected cocaine.

26.     Of note, the packaging of the kilograms seized from the Dodge Ram appeared consistent with the packaging of the suspected cocaine seized from the Jeep Compass.

27.     Following the seizure of suspected cocaine from the Jeep Compass and Dodge Ram, investigators applied for and received a state of Kentucky search warrant authorizing a search of the Winthrop address.

28.     That same evening, investigators executed a search of the Winthrop address. Inside the garage, investigators located sixteen kilograms of suspected cocaine. The packaging of the sixteen brick-shaped kilograms appeared consistent with the packaging of the suspected cocaine seized from the Jeep Compass and Dodge Ram.

6

29. A field test of one kilogram from the Winthrop address—conducted via a reliable, handheld mass spectrometer—positively indicated the presence of cocaine, a schedule II-controlled substance.

30. Underneath the mattress in the master bedroom of the Winthrop address, officers also located and seized a Kahr .45 caliber handgun loaded with a round chambered. Pinder was previously convicted of Trafficking in Controlled Substance, First Degree, Less Than 4 Grams of Cocaine in Fayette Circuit Court (Kentucky) Case No. 14-CR-00056-005.

31. During this operation, investigators seized a total of forty-seven kilograms of suspected cocaine, having an approximate wholesale value of $1,000,000.00. I am aware that this constitutes a significant seizure of illegal drugs intended for further distribution and is in no way consistent with amounts utilized for personal consumption.

## CONCLUSION

32. The facts set forth above demonstrate probable cause that, on or about April 20, 2026, in Fayette County Kentucky, in the Eastern District of Kentucky, Marion Pinder, Edgar Hernandez-Duron, Jesus Rodriguez, and Santiago Rodriguez, aided and abetted by one another, knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and conspired with each other to do the same in violation of 21 U.S.C. § 846.

I declare under the penalty of perjury that the above statement is true and correct to the best of my knowledge, information, and belief.

/s/ Christopher Hill
_____
Christopher J. Hill, Special Agent
Drug Enforcement Administration

7

Sworn to me on April 22, 2026.

_____

HON. MATTHEW A. STINNETT
U.S. MAGISTRATE JUDGE